IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>vs.<br><br>DALTON BATISTE,<br>    Defendant. | NO. 1:24-CR-12 |

**REPORT AND RECOMMENDATION**
**DENYING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Pending before the undersigned is a *Motion to Suppress* (Dkt. #21) filed by the Defendant, Dalton Batiste.[1] The Government responded to Batiste's motion (Dkt. #24), and the undersigned magistrate judge heard testimony and oral argument on July 18, 2024. The undersigned finds that the traffic stop and resulting search were lawful, and therefore, the evidence obtained as a result of the traffic stop should not be suppressed. Accordingly, the undersigned recommends denying the *Motion to Suppress*.

**I. Defendant's Motion and Government's Response**

Batiste is charged in a two count Indictment with violations of 18 U.S.C. 922(g)(1) (Felon in Possession of a Firearm) and 18 U.S.C. § 924(c)(1) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime). Dkt. #10. The charges stem from a traffic stop in Beaumont, Texas, on January 17, 2024, when officers found a firearm, marijuana, scale, and baggies inside Batiste's vehicle. (Transcript of Hearing (hereinafter "Tr.") at 16); *see also* Detective Neal's testimony that these items are indicative of drug trafficking (Tr. 17).

---

[1] This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *United States v. Raddatz*, 447 U.S. 667, 681–84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B) and E.D. Tex. Local R. CR-59(a).

Batiste seeks to have this evidence suppressed. He argues that officers lacked reasonable suspicion for the initial traffic stop, thus the resulting search of the vehicle and seizure of evidence violated the Fourth Amendment. Dkt. #22, p. 4. In support, Batiste relies on a direct conflict between the arrest probable cause ("PC") affidavit and incident report. The PC affidavit states the basis for the stop was Batiste's failure to signal a right turn, whereas the incident report indicates that Batiste was stopped for failure to signal a lane change. The Government responds that the officer drafting the PC affidavit misheard the arresting officer's basis for initially detaining Batiste, resulting in the conflict.[2] Dkt. #24, p. 2.

## II. Legal Standard

The Fourth Amendment protects individuals from unreasonable searches and seizures. Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Because traffic stops are considered more similar to investigative detentions than formal arrests, the legality of traffic stops for Fourth Amendment purposes is analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* requires that courts apply a two-step "reasonable suspicion" inquiry to: 1) determine whether the officer's action was justified at its inception, and 2) determine whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place. *United States v. Zamora*, 661 F.3d 200, 204 (5th Cir. 2011). When there is no warrant, as is the case here, the government bears the burden of establishing by a preponderance of the evidence that the challenged search and/or seizure was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

---

[2] Neither party disputes that it is a violation of Texas Transportation Code § 545.104(a) to change lanes without signaling.

For a traffic stop to be justified at its inception, an officer must have objectively reasonable suspicion that criminal activity is afoot. *United States v. Martinez,* 486 F.3d 855, 859 (5th Cir. 2007). In making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. *See, e.g., United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002). In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. *Arvizu*, 534 U.S. at 274. In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice. *Terry*, 392 U.S. at 27.

In the alternative, the officer must have probable cause[3] that the motorist committed a traffic violation. *Whren v. United States*, 517 U.S. 806, 812 (1996). However, the legal justification for the stop must be objectively grounded. *United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999). If the supposed traffic violation that formed the basis for a stop was in fact not a violation of state law, there is no objective basis for probable cause justifying the stop. *United States v. Miller,* 146 F.3d 274, 279 (5th Cir. 1998). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999).

---

[3] There is some inconsistency in case law whether there must be reasonable suspicion as opposed to probable cause that a traffic violation occurred; however, the Fifth Circuit has stated that both of these standards result in the same requirement. *See United States v. Raney*, 633 F.3d 385, 392, fn. 2 (5th Cir. 2011) ("Because an officer's reasonable suspicion that a traffic violation occurred requires the same objective basis as probable cause for a traffic stop, *i.e.*, that a traffic law was actually violated, we need not undertake a separate analysis.").

"The judge's role at a suppression hearing is to determine the credibility of witnesses and find the facts." *United States v. Jones*, 187 F. Supp. 3d 714, 723 (M.D. La. 2016). "At a suppression hearing, it is 'well within the trial court's discretion' to weigh the evidence and make credibility determinations regarding conflicting testimony." *Id.*; *see Norman v. Stephens*, No. CIV.A. H-13-0624, 2013 WL 6498979, at *21 (S.D. Tex. 2013). If the court determines that Batiste violated Texas law, officers had probable cause for the traffic stop. *United States v. Earthman*, 995 F. Supp. 2d 579, 585 (N.D. Tex. 2014).

### III. Evidence

At the evidentiary hearing on the *Motion to Suppress*, the Government called four witnesses to testify: Detectives Matthew Neal, Jeffery Busby, Brianna Ortega and Officer John Brown.[4] Dkt. #28. Batiste did not call witnesses or present evidence.

Detective Neal testified he was investigating recent fentanyl-induced homicides in Beaumont and relied on witness interviews and "cell phone dumps" to suspect that "Batiste was a subject that delivered the fentanyl-laced Percocets that led to the death[s] of two individuals." (Tr. 6.) As part of this investigation, the team of Detectives Neal, Busby, and Ortega participated in a rolling surveillance operation on Batiste on January 17, 2024. Detectives Neal, Busby, and Ortega (all in undercover, unmarked vehicles) separately trailed Batiste as he departed his residence and followed his activities for approximately forty-five minutes until a traffic stop was initiated. (Tr. 10.) Detective Neal testified that during their surveillance, officers witnessed Batiste conduct two hand-to-hand transactions that "appeared to be that he was distributing narcotics." (Tr. 11.) Detective Neal continued his mobile surveillance after the hand-to-hand transactions and ultimately witnessed Batiste "[fail] to signal his lane change from the inside lane

---

[4] John Brown is listed as a "Detective" on the Government's Witness List. However, because he was following in a marked patrol unit and wearing his police uniform, the undersigned refers to him as "Officer Brown."

directly next to the turn lane to the outside lane closest to the curb" on Major Drive in Beaumont, Texas. (Tr. 12.)

Detective Busby was in a separate unmarked vehicle immediately behind Batiste's vehicle at the time of the traffic violation. (Tr. 31.) Detective Busby testified that he saw Batiste change lanes without signaling. (Tr. 26, 34-35.) At the time, Detective Busby was immediately behind Batiste and witnessed the traffic violation while a marked patrol unit was following—out of Batiste's sight—as part of the surveillance team. (Tr. 28.) Detective Busby notified the marked unit to initiate a traffic stop once he saw Batiste commit a violation. *Id.*

Officer Brown followed the surveillance team in a marked patrol car for the purpose of initiating a traffic stop if Batiste committed a traffic violation. (Tr. 28) Detective Busby testified that "it was [the marked patrol car's] job to catch up to initiate the stop" "once [he] indicated there was a traffic violation." *Id.* Officer Brown testified that "[s]urveillance units advised they had observed [Batiste] conduct a lane violation and that was going to be the probable cause for the traffic stop." (Tr. 34.) Like Officer Brown, Detective Ortega could not see Batiste's vehicle when the traffic violation occurred. (Tr. 52.) She testified that she completed the PC affidavit based on a misunderstanding of what Officer Brown reported over the telephone. (Tr. 55) ("I misunderstood what he said. . ."). Detective Ortega stated that she misunderstood Officer Brown's explanation for the traffic stop and instead wrote in the PC affidavit that the traffic stop was initiated "after officers observed the driver failed to signal" *a right turn*, instead of the actual violation for failure to signal *lane change*.

The undersigned has reviewed Government's Exhibit 1 and Officer Brown's body camera footage in its entirety. The footage corroborates the detectives' testimony. At approximately thirty-six minutes into the footage, Officer Brown is discussing the details of the PC affidavit

5

with Detective Ortega by cell phone, and Officer Brown states to Detective Ortega that the reason for the traffic stop was "failure to signal lane change." (Gov't. Ex. 1, at 36:30.)

## IV. Discussion

The court considered the evidence of record and finds the detectives' testimony credible. Two detectives testified that they witnessed Batiste make a lane change without signaling. Officer Brown, who was following but did not witness the violation himself, testified that he was advised to initiate a traffic stop on Batiste's vehicle for failure to signal lane change.[5] Detective Ortega wrote the PC affidavit that stated that the traffic stop was initiated for failure to signal eastbound turn, but admits she made a mistake based on a misunderstanding of what Officer Brown conveyed was the basis for the stop. (Tr. 53, ln. 13-17.) And, most importantly, Officer Brown's body camera footage corroborates Detective Ortega's misunderstanding.

Accordingly, the undersigend concludes there was probable cause that Batiste committed a traffic violation for failure to signal a lane change, and recommends denying the *Motion to Suppress.*

## VII. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(2); E.D. TEX. LOCAL R. CR-59(c). A party who objects to this Report is entitled to a *de*

---

[5] Under the "collective knowledge doctrine," an officer initiating the stop or conducting the search need not have personal knowledge that gave rise to reasonable suspicion or probable cause so long as he is acting at the request of those who have the necessary information. *United States v. Broussard*, No. 23-30126, 2024 WL 2746969, at *3 (5th Cir. May 29, 2024); *see also United States v. Zuniga*, 860 F.3d 276 (5th Cir. 2017).

*novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 13th day of August, 2024.

_____
Zack Hawthorn
United States Magistrate Judge